UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. |
| | ) | 5:18-cr-104-JMH-CJS-1 |
| Plaintiff, | ) | |
| | ) | Civil No. |
| v. | ) | 5:20-cv-296-JMH-CJS |
| | ) | |
| BOBBY T. CASSADY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*

This matter comes before the Court on Magistrate Judge Candace J. Smith's Report and Recommendation [DE 117] recommending Defendant Bobby T. Cassady's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 96] be denied. Cassady has filed an Objection to the Report and Recommendation [DE 118], so his § 2255 Motion [DE 96] is ripe for review by this Court.

Magistrate Judge Smith recommends Cassady's Motion [DE 96] be denied because this Court does not have jurisdiction to rule on Cassady's ineffective assistance of counsel claim and Cassady has failed to show that his counsel was ineffective. [DE 117, at 7-15]. It is further recommended that the undersigned deny Cassady's request for an evidentiary hearing and a certificate of appealability to the United States Court of Appeals for the Sixth Circuit. *Id*. at 15-16. The Court agrees with Magistrate Judge Smith

that this Court lacks jurisdiction to rule on Cassady's claim of ineffective assistance of counsel presented in his Motion [DE 96]. Thus, Cassady's petition for relief under § 2255 will be **DENIED**, and the Court will decline to grant his requests for an evidentiary hearing and for the issuance of a certificate of appealability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2015, Cassady was indicted in the Boyle Circuit Court on three counts of unlawful transaction with a minor, one count of promoting a sexual performance by a minor, one count of possessing/viewing a matter portraying sexual performance by a minor, and two counts of sexual abuse. [DE 112-1, at 2]. On May 17, 2016, Cassady was indicted a second time in the Boyle Circuit Court, in a separate case from the earlier indictment, and charged with 20 counts of unlawful transaction with a minor in the first degree. *Id.*

Cassady initially retained Attorney Ephraim Helton to represent him in both state court cases. *Id.* at 1. While representing Cassady in his state court proceedings, Attorney Helton participated in "extensive" plea negotiations with the Boyle County Commonwealth's Attorney in an attempt to secure a plea offer six years imprisonment. [DE 106-2, at 1-2]. After Helton was unsuccessful at obtaining an offer of six years imprisonment, Cassady retained Attorneys Ashley Witte Dawson and Adam Boyd Bleile to represent him in the state court proceedings in February 2017.

2

[DE 112-1, at 1]. Attorneys Dawson and Bleile continued plea negotiations with the Boyle County Commonwealth's Attorney, who "informally suggested an 18 to 20 year offer" with the possibility of parole after service of 85% of the sentence, which Cassady refused to accept. *Id*. at 4. On August 23, 2018, a federal grand jury returned a five-count indictment against Cassady in this Court charging him with coercing a minor to engage in visual depictions of sexually explicit conduct and receipt and possession of child pornography. [DE 1]. Following the federal indictment, Cassady added Attorney William M. Butler, Jr. to his defense while still retaining Attorneys Dawson and Bleile. [DE 112-2, at 1].

On February 4, 2019, Cassady pleaded guilty to Count 2 of the federal indictment, a violation of 18 U.S.C. § 2251(a), for employing, using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. [DE 33; DE 44]. Specifically, Cassady admitted that while he worked as a youth pastor at a church in Danville, Kentucky, and volunteered as a "mentor" or "character coach" with the Danville High School football team, he had posed as a young female and asked multiple male minors to send him explicit photos and videos. [DE 34; DE 41]. Cassady then threatened to distribute the images and videos to coerce the victims to send more. *Id*. Furthermore, Cassady admitted that he had child pornography on his electronic media and

3

that said child pornography would be distributed via the internet. *Id.*

On April 4, 2019, Attorneys Dawson, Bleile, and Butler were granted their request to withdraw as counsel for Cassady and were replaced by Attorney David S. Mejia. [DE 48]. Attorney Mejia filed a Motion to Withdraw Guilty Plea [DE 52], arguing that neither Helton nor the Dawson group of lawyers had filed any pretrial motions in either state or federal court seeking to exclude statements Cassady made to his minister and police. He also argued Attorneys Dawson, Bleile, and Butler made no effort to negotiate with the United States and had not adequately advised Cassady regarding the plea. *Id*. The Court denied Cassady's request to withdraw his guilty plea. [DE 59]. On June 24, 2019, the Court sentenced Cassady to 180 months imprisonment. [DE 73]. Cassady did not file a direct appeal. The Judgment was later amended to correct an error in the assessment of the amount to be paid under the Justice for Victims of Trafficking Act of 2015. [DE 82]. However, the Amended Judgment [DE 82] did not alter the terms of Cassady's incarceration.

On July 8, 2020, Cassady, through counsel Alan Ellis and Jonathan I. Edelstein, filed the pending Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 96]. Cassady's § 2255 Motion raises the

4

following single ground for relief on the basis of ineffective assistance of counsel:

> This case was originally lodged in state court, and the state court proceeding went on for several years before the federal indictment was brought. My prior counsel, Ashley Witte Dawson and Adam Boyd Bleile, began representing me when the case was in state court. They did not tell me I could plead guilty in state court with or without the benefit of a plea agreement. They erroneously told me that I would be better off in federal court and would face less sentencing exposure there than offered in state court. They did not tell me that if I were indicted federally, I would face a count of inducing a minor to produce sexually explicit images which could carry a maximum sentence of 25 years. In reliance on their advice, I did not plead guilty in state court where my sentencing exposure and likely sentence would have been much less than the 180 months I received in this Court, especially given that Kentucky law allows sex offenders to be paroled once they have completed a sex offender treatment program. In addition, in reliance on their advice, I allowed them to adjourn/continue the case in anticipation that the United States Attorney's office would pick it up. But for this advice, I would

have pled guilty in state court either with or without a plea agreement.

*Id.* at 4.

On July 21, 2020, Cassady, through counsel, filed a Brief in Support of his § 2255 Motion [DE 106] with attached Affidavits from Cassady [DE 106-1] and Attorney Helton [DE 106-2]. Cassady's Affidavit [DE 106-1] is essentially what he set forth in his § 2255 Motion. In Attorney Helton's Affidavit [De 106-2], he states that he attempted "to secure an offer of six years," but "[t]he prosecutor proved reluctant to offer a six-year sentence." [DE 106-2, at 2]. However, Attorney Helton states, "[I]t is my *belief*, based on my interactions with the Commonwealth Attorney's office, that a seven to eight year sentence was available." *Id.* (emphasis added). Attorney Helton also suggests that Cassady could have entered an open or "wild" guilty plea, meaning Cassady could have pleaded guilty without the benefit of a plea agreement, and would have received "in an absolute worst case scenario, 10 years." *Id.* However, Attorney Helton acknowledges that Cassady's sentence for each count could have been "stacked to a maximum of 20 years, and the sentence would have been at the discretion of the Circuit Court judge, Hon. Darren W. Peckler." *Id.* Finally, Attorney Helton states that based on his experience, if Cassady would have pleaded guilty in state court, "he would in all likelihood not have been indicted federally." *Id.* at 3.

6

In its Response [DE 112], the United States asserts that Cassady violated both state and federal laws and, accordingly, faced prosecution in both jurisdictions. [DE 112, at 3]. Despite Attorney Helton's belief to the contrary, the United States points out that Attorney Dawson and Butler opined that Cassady likely would have been indicted federally in addition to a state guilty plea. *Id*. at 3-4 (quoting [DE 112-1, at 6; DE 112-2, at 4]). It further points out that a guilty plea in state court, either open or pursuant to a plea agreement, would not have foreclosed federal prosecution absent a waiver by the United States, which did not exist. *Id*. at 4.

The United States further argues that because federal prosecutors were not involved in state court plea negotiations, any constitutional violations that occurred at the state court level are not within the jurisdiction of this Court because "the federal government was not involved in any supposed violation." *Id*. at 6 (citing *United States v. McConer*, 530 F.3d 484, 494 (6th Cir. 2008)). Moreover, the United States argues, "Cassady's request for this Court to remand his case to state court . . . is improper" because "'[a] federal district court lacks jurisdiction to 'remand' a criminal case to state court to remedy constitutional errors.'" *Id*. The United States attaches Affidavits from Attorneys Dawson [DE 112-1], Butler [DE 112-2], and Bleile [DE 112-3] to its Response [DE 112].

7

In her Affidavit [DE 112-1], Attorney Dawson states, "20 years would be Cassady's best case scenario based upon the number of counts and specific facts surrounding his cases." [DE 112-1, at 3]. Attorney Dawson also states the Commonwealth's Attorney never offered a plea deal to Cassady, and if an offer had been made, Cassady stated that he "would only consider 'a slap on the wrist' and 'have a nice day' resolution." *Id*. at 4. According to Attorney Dawson, any delay in the state court proceedings was pursued at Cassady's request, and he was fully advised of all his options, including entering an open plea. *Id.* at 4-5, 7.  Finally, although Attorney Dawson did discuss some advantages to litigating in federal court, such as certain rulings being fairer due to the case being moved out of Cassady's town of residence, she advised Cassady that federal penalties "are way more stringent and serious." *Id*. at 6.

Like Attorney Dawson, Attorney Bleile asserts that he did not tell Cassady that he would be better off in federal court. [DE 112-3, at 4]. Moreover, Attorney Bleile asserts that he and Attorney Dawson were aware the United States would seek an indictment several months before that occurred, and they advised Cassady of that fact. *Id*. Attorney Bleile states that he discussed the option of an open plea, which Attorney Bleile believes "alone would constitute malpractice, especially [he] initially believed there were at a minimum, beatable issues in State Court," with

8

Cassady, and Cassady "declined to accept such proposition." *Id*. at 8. Attorney Butler, who was not involved in the state court proceedings, asserts that he has reviewed the state court record and agrees with Attorneys Dawson and Bleile. [DE 112-2, at 1].

In his Reply [DE 116], Cassady argues that he is not required "to prove that a federal prosecution would have been absolutely barred if he had pled guilty in state court." [DE 116, at 2]. Instead, Cassady claims he is only required to show there was a reasonable probability no such prosecution would take place. *Id*. Furthermore, Cassady argues that a defendant claiming ineffective assistance of counsel need not prove that a state court plea offer existed, as he is only required to prove that there was a "'better than negligible' probability a plea bargain could have been made." *Id*. at 3 (citing *Fulcher v. Motley,* 444 F.3d 791, 799 (6th Cir. 2006)). Finally, Cassady argues that Attorney Bleile's statement that he was aware the Commonwealth's Attorney was discussing this matter with federal prosecutors prior to the federal indictment is sufficient federal nexus to give the federal court jurisdiction. *Id*. at 6. Magistrate Judge Smith's Report and Recommendation [DE 117] and Cassady's Objection [DE 118] will be discussed further below.

## II. STANDARD OF REVIEW

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165

9

F.3d 486, 488 (6th Cir. 1999) ("[B]oth the right to appeal and the right to seek post-conviction relief are statutory rights that may be waived if the waiver is knowingly, intelligently, and voluntarily made."). For a petitioner to prevail on a 28 U.S.C. § 2255 claim, he must show that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law nor open to collateral attack, or otherwise must show that there was "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Put another way, "[t]o prevail on a motion under § 2255, a [petitioner] must prove '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014) (quoting *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012)). The petitioner must sustain these allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (unpublished) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). If the petitioner alleges a constitutional error, he must establish by a preponderance of the

10

evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Pough*, 442 F.3d at 964. Alternately, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

A petitioner may object to a magistrate judge's report and recommendation. Fed. R. Civ. P. 72(b)(2). If the petitioner objects, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). "Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Carson v. Hudson*, 421 F. App'x 560, 563 (6th Cir. 2011) (quoting *Souter v. Jones*, 395 F.3d 577, 585–86 (6th Cir. 2005).

### III. DISCUSSION

Cassady's objections to the Report and Recommendation [DE 118] expand on the arguments he used to support his § 2255 petition. *See* [DE 118]. The Court, having reviewed the record, finds this Court lacks jurisdiction to rule on Cassady's claim of ineffective assistance of counsel. Further, this Court finds

11

Cassady is not entitled to an evidentiary hearing and declines to issue a certificate of appealability in this case.

### A. JURISDICTION

Despite Cassady's assertions to the contrary, the Court clearly does not have jurisdiction to rule on Cassady's ineffective assistance of counsel claim. Put simply, the United States was not sufficiently involved in the state court proceedings to give this Court jurisdiction over Cassady's claim. Moreover, there was no waiver, either in place or discussed, that would have prevented the United States from pursuing an indictment in this Court, even if Cassady would have pleaded, by open plea or agreement, in state court. As Magistrate Judge Smith correctly states, "Cassady's . . . reliance on *Morris*, *Waite*, and *Nixon* is misplaced[,]" [DE 117, at 7], and each case helps illustrate the jurisdictional issue with Cassady's claim.

Morris's arrest arose from a joint federal-state investigation titled Project Safe Neighborhoods, resulting in him being charged with several drug-related offenses in state court. *United States v. Morris,* 470 F.3d 596, 598 (6th Cir. 2006). Morris's counsel explained the state's plea offer and understated what Morris's possible federal sentence could be. *Id.* Based on Morris's counsel's understatement of federal sentencing exposure, Morris rejected the state's offer. *Id.* at 599. The United States then filed an indictment against Morris in federal district court.

*Id.* Morris moved to remand the case to state court, arguing that his counsel's underestimation of the possible federal sentence "had denied him his Sixth Amendment right to counsel." *Id.* The federal district court agreed and remanded Morris's case to state court.

The United States appealed the matter to the Court of Appeals for the Sixth Circuit, which addressed the jurisdictional issue of whether the federal district court had the "authority to address perceived constitutional errors in the state proceedings by dismissing the federal indictment and 'remanding' to state court." *Id.* 599-600. The Sixth Circuit noted the following: "the United States Attorney's office was involved with the state court plea negotiations pursuant to Project Safe Neighborhoods"; "the United States Attorney's Office was involved in deciding whether a plea offer would be made available to Morris in state court"; and "the state court plea offer included an agreement that Morris would not be prosecuted in federal court, even though the state and federal governments could have chosen to pursue separate prosecutions." *Id.* at 600. The Sixth Circuit found that the United States' involvement in the state proceedings effectively made the United States "a party to the state court plea offer," which gave the federal district court jurisdiction to address Morris's claim of state-level ineffective assistance of counsel. *Id.*

13

Unlike in *Morris*, the Commonwealth's Attorney in the present case never made a plea offer to Cassady. Attorney Helton states that he attempted to negotiate a plea involving a sentence of six years, but the Commonwealth's Attorney "proved reluctant to offer a six-year sentence." [DE 106-2, at 2]. Moreover, Attorney Helton does not claim that he ever actually obtained an offer. As Magistrate Judge Smith states, "The closest the Commonwealth came to making any plea offer was an informal suggestion to Attorney Dawson of an 18 to 20-year sentence with the possibility of parole after 85% service of that sentence." [DE 117, at 8-9 (citing [DE 112-1, at 3])].

Furthermore, unlike in *Morris,* there is no evidence that the United States Attorney knew of or participated in any plea negotiations that took place. Cassady asserts that the Commonwealth's Attorney's office "would at minimum have told [the United States Attorney's Office] about the charges and underlying facts" since the Commonwealth's Attorney "wanted federal authorities to take the case." [DE 118, at 6]. However, there is no evidence that the Commonwealth's Attorney and the United States Attorney discussed state-level plea negotiations with each other or that the United States Attorney discussed those negotiations with any of Cassady's attorneys. Even if the Commonwealth's Attorney wanted the United States Attorney to take the case, that does not mean the Commonwealth's Attorney, in fact, discussed the

14

matter with the United States Attorney nor would such a discussion necessarily mean this Court had jurisdiction over the matter. As Attorney Bleile stated, and as Cassady admitted, "[t]he United States did not appear interested in prosecuting [this] matter Federally as it did not seem to be an immediate priority." [DE 112-3, at 4]; *see also* [DE 116-1, at 5]. There is nothing in the record to suggest that the United States was involved in this matter during the state court plea negotiations.

Finally in *Morris*, the state plea offer contained a specific waiver of prosecution by the United States. *Morris,* 470 F.3d at 600. Here, there was no waiver of prosecution by the United States, and there could not have been because there was no plea offer by the state. The only similarity between Cassady and *Morris* is Cassady's allegation that, like Morris, he received incorrect advice regarding his possible federal sentence. However, as Magistrate Judge Smith correctly states, "[T]hat is not sufficient, in and of itself, to establish the active federal participation in state plea negotiations necessary to confer jurisdiction on the federal court." [DE 117, at 10].

*Waite v. United States* is also unhelpful to Cassady's arguments in this matter. 601 F.2d 259 (6th Cir. 1979). The state court accepted Waite's guilty plea to a lenient state sentence and advised him that its acceptance of that plea was contingent on Waite pleading guilty in federal court, which Waite did. *Id.*

15

Following his federal guilty plea, Waite argued that he had been unconstitutionally coerced into entering that plea by an "implied threat" of a harsher state sentence and that federal prosecutors had deceived him and failed to uphold their end of the plea agreement. *Id.* The Sixth Circuit held, "Although it is possible that Waite may have believed that a harsher state sentence would be imposed if he chose to plead 'not guilty' in federal court, we do not consider this to be unconstitutional coercion." *Id.* at 260. The Sixth Circuit further held there was no evidence federal prosecutors failed to keep any promises made during negotiations. *Id.* Unlike Cassady, Waite did not raise any ineffective assistance of counsel claims. Instead, Waite alleged coercion and deception at the federal level, so the Sixth Circuit did not even address the issue of jurisdiction.

In *United States v. Nixon*, the district court found that "the Unites States Attorney made promises to Defendants" during the state court plea negotiations, thereby bringing the matter within the Court's jurisdiction. 318 F. Supp. 2d 525, 527 (E.D. Mich. 2004). Unlike Nixon, Cassady has made no showing that the United States Attorney either participated in state court plea negotiations or made any promises to him. Therefore, *Nixon* is neither persuasive nor helpful to Cassady's argument. For the forgoing reasons, the Court agrees with Magistrate Judge Smith that this Court lacks jurisdiction to rule on Cassady's ineffective

assistance of counsel claim and will deny Cassady's § 2255 Motion [DE 96] on this basis.

## B. EVIDENTIARY HEARING

Section 2255 requires that a district court hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) ("[T]he court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."); *Schriro v. Landigran,* 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Magistrate Judge Smith recommends Cassady's request for an evidentiary hearing be denied as moot because the Court lacks jurisdiction to hear Cassady's claim, and for the reasons started herein, the Court agrees. [DE 11, at 15]. Thus, Cassady's request for an evidentiary hearing will be denied as moot.

## C. CERTIFICATE OF APPEALABILITY

"[A] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing for constitutional claims rejected on the merits, a defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). The "question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342. For claims denied on procedural grounds, a certificate appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In the present case, the Court finds that reasonable jurists would not debate the denial of Cassady's Motion [DE 96]. Thus, the Court will not issue a certificate of appealability in this matter.

## IV. CONCLUSION

In the instant case, Cassady's Motion [DE 96] fails to demonstrate this Court has jurisdiction to rule on his ineffective assistance of counsel claim. Because "it plainly appears . . .

18

that the moving party is not entitled to relief, the [Court] must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4.

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant Bobby T. Cassady's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 96] is **DENIED**;

(2) Cassady's request for an evidentiary hearing is **DENIED AS MOOT**;

(3) Cassady's request for a certificate of appealability is **DENIED**;

(4) This action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) Judgment **SHALL** be entered contemporaneously with the Memorandum Opinion and Order.

This 9th day of December, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge